STATE OF NORTH CAROLINA v. JULIUS EDGAR MILLER

No. 115A91

(Filed 3 October 1991)

1. **Criminal Law § 73.2 (NCI3d)— residual exception to hearsay rule—failure to remember details—disagreement with officer's account—witnesses not "unavailable"**

Neither the fact that two State's witnesses failed to remember every detail of a killing nor the fact that they disagreed with an officer's account of their out-of-court statements rendered them "unavailable" as witnesses for purposes of the residual or "catchall" exception to the hearsay rule set forth in N.C.G.S. § 8C-1, Rule 804(a). It was thus error for the trial court to admit their hearsay out-of-court statements to the officer as substantive evidence under Rule 804.

**Am Jur 2d, Evidence § 500.**

2. **Criminal Law § 89.9 (NCI3d)— hearsay evidence admissible for impeachment—refusal to give limiting instruction— erroneous consideration as substantive evidence**

Even if hearsay statements by two State's witnesses to an officer were admissible for impeachment purposes under Rule of Evidence 607, the trial court's failure to give defendant's requested limiting instruction resulted in the evidence being erroneously considered by the jury as substantive evidence.

**Am Jur 2d, Evidence § 500.**

3. **Constitutional Law § 340 (NCI4th)— hearsay statements— right of confrontation not violated**

The admission of hearsay statements by two witnesses did not violate defendant's Sixth Amendment right of confron-

tation where both declarants testified at trial and were cross-examined by defendant.

**Am Jur 2d, Constitutional Law § 849; Evidence § 500.**

**4. Criminal Law § 73.1 (NCI3d) — hearsay statements — admission as substantive evidence — prejudicial error**

The trial court's error in admitting the out-of-court statements of defendant's two sons as substantive evidence under Rule 804(b)(5) was prejudicial to the defendant in this first degree murder trial where the statements of both sons contained accounts of how defendant pointed a gun at the victim repeatedly during an argument, stating "I ought to kill you"; the statements contained damaging accounts of how defendant stepped from the victim, pointed the gun at him and pulled the trigger; and the statements provided the only purported eyewitness accounts of such acts and statements by defendant and added strong evidence tending to show a premeditated and deliberate murder.

**Am Jur 2d, Evidence § 500.**

Justice WHICHARD dissenting.

Justice MEYER joins in this dissenting opinion.

THE defendant was indicted on 18 July 1989 for the murder of Larry Ford. He entered a plea of not guilty. He was tried by jury at the 30 October 1990 Criminal Session of Superior Court, RUTHERFORD County, before *Friday, J.* The defendant was found guilty of murder in the first degree and sentenced to life in prison. He appealed to the Supreme Court as a matter of right pursuant to N.C.G.S. § 7A-27(a). Heard in the Supreme Court on 10 September 1991.

*Lacy H. Thornburg, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State.*

*Ferguson, Stein, Watt, Wallas, Adkins & Gresham, P.A.; by James E. Ferguson, II, for the defendant-appellant.*

MITCHELL, Justice.

The defendant, Julius Edgar Miller, seeks a new trial on the charge of first-degree murder, contending that the trial court erred

in admitting certain unsworn, out-of-court statements by witnesses who were available and testified at trial. We conclude that the defendant's contention has merit and that he must be granted a new trial.

The State's evidence tended to show that in July of 1989, the defendant and his wife Daisy had been separated for some years. They had four children; two daughters lived with Mrs. Miller, and two sons with the defendant. Mrs. Miller had been dating Larry Ford for about a year.

On the afternoon of 8 July 1989, the defendant went to Daisy Miller's house. He went into the bedroom where she was resting and began to "fuss" at her about her relationship with Ford. When Mrs. Miller received a telephone call from Ford, the defendant left.

Julius Tyrone Miller, the defendant's son, testified that during the summer of 1989, he was living with the defendant. Tyrone knew the victim, Larry Ford, because Ford was dating his mother, Daisy Miller. Tyrone went to Ford's house on 8 July 1989 to help Ford wash his car. When Tyrone arrived, Ford was waxing the car. Tyrone saw the defendant arrive at the house, argue with Ford and accuse Ford of ruining his family. The defendant then left in his truck, saying that he would return.

Tyrone further testified that five or ten minutes after leaving Ford's home, the defendant returned. Tyrone approached the defendant and saw a gun on the seat of his truck. Tyrone ran to Ford and advised him to go inside the house, but Ford refused. Tyrone then saw his brother Jason run from behind the defendant's truck. At this point, the defendant and Ford were arguing again. The defendant raised his gun twice, but Jason "hit" it away. The second time Jason did this, the defendant pushed him out of the way. Tyrone testified that he was standing on the other side of Ford when the defendant raised the gun again. Tyrone turned his head away so that the defendant would not shoot him, at which time Ford fell to the pavement. Jason then struggled with the defendant for the gun, while Tyrone broke into Ford's house to use the telephone. Tyrone called his mother and told her that the defendant had shot Ford. He then stopped his cousin on the street, and they transported Ford to the hospital.

The State questioned Tyrone at trial about a pre-trial statement he had made to Officer Roger Maxwell on 8 July 1989. Tyrone

testified that the officer wrote down what Tyrone told him, after which Tyrone looked it over. Tyrone told Maxwell that he had seen the defendant step back, aim the gun and then fire it at Ford. Tyrone testified that he told the prosecutor just before trial that the information he had given Officer Maxwell had been true, but then stated that it was not "what [he was] telling the jury." Tyrone testified that he could not remember the prosecutor asking him what the defendant had done after Ford was shot. He also testified that he "did not see [the defendant] when he cocked the rifle" and that the defendant did not cock the rifle. Tyrone further denied ever telling the prosecutor or Officer Maxwell that the defendant had cocked the rifle.

Jason Miller, the defendant's other son, testified that on 8 July 1989, he saw the defendant's truck pull up to Ford's house. He walked up the street toward the house and heard the defendant and Ford arguing about Daisy Miller. Jason testified that the defendant had a gun in his hand, but he was pointing it down. The defendant stood in the street close to Ford who was unarmed. Then the defendant raised the gun barrel and pointed it at Ford "like a finger." Jason pushed the gun barrel down several times. Jason testified that he did not know how the gun went off because he was "so scared." After the gun was fired, Jason immediately jerked it out of the defendant's hands and led him to his truck.

Upon further questioning by the State, Jason testified that he too had given a pre-trial statement to Officer Maxwell. He testified, however, that he did not know what he was saying when he gave that statement because he was "so scared." After the prosecutor showed Jason his statement, Jason admitted that, contrary to his trial testimony, he had told Officer Maxwell that he knew how the gun had fired; the defendant had held the gun down at his side, taken a couple of steps back, raised the gun, pointed it at Ford and pulled the trigger. Jason denied that he had ever told Officer Maxwell that, after the defendant shot Ford, the defendant cocked the gun and pointed it at Ford who had fallen to the ground. Jason admitted that he remembered going over his statement to Officer Maxwell with the prosecutor just before trial, but said that he could not remember any details of that meeting.

Juliette Surratt testified that the defendant was her uncle. On the afternoon of 8 July 1989, she was mowing the grass at Ford's house while Ford waxed his car. She saw the defendant

approach Ford and begin to argue with him. She testified that the defendant had a gun, but he did not point the barrel at Ford.

Officer Roger Maxwell of the Rutherfordton Police Department testified that on 8 July 1989 he arrived at the residence of Larry Ford at approximately 3:35 p.m., but no one was there. He found a .22 caliber Winchester rifle in the yard. He identified the rifle at trial. Officer Maxwell testified that a lever on the rifle was used to load the firing chamber prior to firing. After a round was fired, it was necessary to operate the lever again to eject the spent shell casing and load another round for firing. Officer Maxwell also testified that he found two spent .22 caliber shell casings in the street in front of the victim's home and one on the edge of the street.

Officer Maxwell testified that he had interviewed Tyrone and Jason Miller during the evening of 8 July 1989. He wrote down their respective accounts of the events they had witnessed. Maxwell then read the statements back to them aloud. He then instructed the boys to read the statements and initial and sign them only if they found them to be true. Over the defendant's objection, Officer Maxwell read the statements of Tyrone and Jason Miller to the jury.

Dr. Richard Landau was accepted and testified as an expert in the field of pathology. He testified that he had done an autopsy examination of the body of the victim Ford. Dr. Landau concluded that Ford's death was due to a gunshot wound to the head causing massive brain destruction.

Special Agent Eugene Bishop of the State Bureau of Investigation Crime Laboratory was accepted and testified as an expert in the field of firearms examination and identification. His opinion was that the bullet that killed the victim and two of the fired shell casings found at the crime scene all had been fired by the .22 caliber Winchester rifle Officer Maxwell had found there.

[1] By his first assignment of error, the defendant contends that the trial court erred in admitting the unsworn, out-of-court statements of Tyrone and Jason Miller as substantive evidence under Rule 804 of the North Carolina Rules of Evidence. The defendant argues that the trial court erred in admitting those statements under Rule 804, because the two witnesses had already testified and were never "unavailable" as witnesses within the meaning of that rule.

**STATE v. MILLER**

[330 N.C. 56 (1991)]

Rule 804(b)(5) encompasses one of the residual or "catch-all" exceptions to the hearsay rule. Rule 804(b)(5)—unlike Rule 803(24), which was not relied upon by the trial court or raised by the State—requires that the declarant be "unavailable" for a hearsay statement to be admitted. Rule 804(a) defines "unavailability as a witness" to include situations in which the declarant:

(1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement; or

(2) Persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; or

(3) Testifies to a lack of memory of the subject matter of his statement; or

(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) Is absent from the hearing and the proponent of his statement has been unable to procure his attendance (or in the case of a hearsay exception under subdivision (b)(2), (3), or (4), his attendance or testimony) by process or other reasonable means.

A declarant is not unavailable as a witness if his exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the witness from attending or testifying.

N.C.G.S. § 8C-1, Rule 804(a).

The trial court conducted voir dire examinations of both Tyrone and Jason Miller to determine whether they were "unavailable" under Rule 804(a). Both witnesses testified they remembered the incident in question. They testified that they remembered most of what they saw and had not had a complete failure of memory about the events. Under questioning by the prosecutor, both witnesses admitted, however, that they did not remember every single detail of the incident. Based on this testimony, the trial court ruled that the witnesses were "unavailable" and admitted their out-of-court statements to Officer Maxwell as substantive evidence under Rule 804(b)(5).

The facts sufficient to sustain a finding that a witness is "unavailable" within the meaning of Rule 804 will vary from case to case. *State v. Triplett*, 316 N.C. 1, 8, 340 S.E. 2d 736, 740 (1986). "If the witness is available to testify at trial, the 'necessity' of admitting his or her statements through the testimony of a 'hearsay' witness very often is greatly diminished if not obviated altogether." *State v. Fearing*, 315 N.C. 167, 171-72, 337 S.E. 2d 551, 554 (1985). *See State v. Smith*, 315 N.C. 76, 337 S.E. 2d 833 (1985).

In the present case the witnesses were available to testify and, indeed, had already testified concerning the subject matter of the hearsay statements. In a similar case decided under the Federal Rules of Evidence, the United States Court of Appeals for the Fifth Circuit stated:

The plaintiffs' second argument is that [the witness] was "partially unavailable" and that the [hearsay] testimony was therefore admissible under Federal Rule of Evidence 804(a)(3) because, although he testified at trial, he stated that "the specific dialogue of this conversation has faded with the years." . . . [The witness] did, however, remember the general subject matter discussed, and his lack of memory of the details is not sufficient to make the [hearsay] testimony admissible.

*North Mississippi Communications, Inc. v. Jones*, 792 F.2d 1330, 1336 (5th Cir. 1986). Although not binding precedent, we find that Court's reasoning persuasive in the present case.

Neither the fact that Tyrone and Jason Miller failed to remember every detail of the killing, nor the fact that they disagreed with Officer Maxwell's account of their out-of-court statements, was sufficient to render them "unavailable" as witnesses for the purposes of Rule 804(a). It was error to admit their hearsay statements as substantive evidence under that rule.

[2] The State argues on appeal that, at worst, the trial court admitted the statements under the wrong rule. *State v. McElrath*, 322 N.C. 1, 17, 366 S.E. 2d 442, 452 (1988). Specifically, the State contends that the statements were admissible for impeachment purposes under Rule 607. Rule 607 provides that: "The credibility of a witness may be attacked by any party, including the party calling him." N.C.G.S. § 8C-1, Rule 607. This Court has recognized that where the party calling a witness is genuinely surprised by the witness' change of his or her version of facts, impeachment

by prior inconsistent statements is proper. *State v. Hunt*, 324 N.C. 343, 350, 378 S.E. 2d 754, 758 (1989). However, it is well settled that in such situations the prior inconsistent statements may only be used to impeach the witness' credibility; they may not be admitted as substantive evidence. *State v. Hunt*, 324 N.C. at 350, 378 S.E. 2d at 758; *State v. Grady*, 73 N.C. App. 452, 456, 326 S.E. 2d 126, 129 (1985); 1 Brandis on North Carolina Evidence § 46 (1988).

In the present case, the defendant properly requested an instruction by the trial court that the pre-trial statements of the defendant's sons could be considered only for the purpose of impeaching their trial testimony. Thus, even if the evidence in question was admissible under Rule 607 for impeachment purposes, the trial court's failure to give the requested instruction resulted in the evidence being improperly considered by the jury as substantive evidence without any limitation; this constituted error.

[3] We must consider, then, whether the trial court's erroneous admission of the out-of-court statements of Tyrone and Jason Miller without any limiting instructions was prejudicial to the defendant. The defendant contends that his Sixth Amendment right of confrontation was denied by the admission of those statements. However, "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *California v. Green*, 399 U.S. 149, 158, 26 L. Ed. 2d 489, 497 (1970). In the present case, both declarants in question testified at trial and were in fact cross-examined by the defendant. Thus, no constitutional error occurred.

Since the trial court's error in admitting the out-of-court statements of Tyrone and Jason did not arise under the Constitution of the United States, we apply the standard of review prescribed by N.C.G.S. § 15A-1443(a). Under this standard, errors are prejudicial "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C.G.S. § 15A-1443(a) (1988).

[4] In the present case, we are forced to conclude that the trial court's error in admitting the out-of-court statements as substantive evidence under Rule 804 was prejudicial. The pre-trial statements by the defendant's sons provided evidence of important facts, not supported by other direct evidence at trial, regarding premedita-

tion and deliberation. The pre-trial statements of both boys contained accounts of how the defendant pointed the gun at the victim repeatedly during their argument, stating "I ought to kill you." The statements also contained damaging accounts of how the defendant stepped back from the victim, pointed the gun at him and pulled the trigger. The pre-trial statements provided the only purported eyewitness accounts of such acts and statements by the defendant and added strong evidence tending to show a premeditated and deliberate murder. Thus, we are compelled to conclude that there is a "reasonable possibility" a different result would have been reached at trial had this error not occurred.

We conclude that the admission of the out-of-court statements under Rule 804(b)(5) as substantive evidence was prejudicial error which entitles the defendant to a new trial.

New trial.

Justice WHICHARD dissenting.

While I agree that it was error to admit the prior inconsistent statements as substantive evidence under Rule 804, I do not agree that their admission was harmful to defendant. Had the statements not been admitted, there is no reasonable possibility of a different outcome. N.C.G.S. § 15A-1443(a) (1988). The jury, which was instructed properly as to the only defense, that of accident, was equally likely to reject that defense with or without the inadmissible evidence.

The only evidence placed before the jury through the improperly admitted statements which would not otherwise have been before it is the following: the portion in which Tyrone reports that defendant said, "I ought to kill you," while he pointed the gun at Ford; the portions in which both boys described how defendant pushed Jason out of the way, took one step back, aimed the gun at Ford, and shot him in the head; and the portions in which both boys recounted that defendant then cocked the rifle again and pointed it toward the felled victim. To determine the harmfulness of this evidence, it must be considered in the context of the properly admitted, inculpatory evidence that supports the verdict. That evidence was as follows:

Daisy Miller, defendant's estranged wife, testified that shortly before the shooting, during an argument about her dating the vic-

**STATE v. MILLER**

[330 N.C. 56 (1991)]

tim, defendant told her, "You think you're going to be with him, but you're not."

Tyrone Miller, defendant's son, testified that after defendant accused Ford of ruining his family and taking his sons, and before he left in his truck, threatening to return as he left, defendant said to Tyrone, "I'm going to kill him [Ford]." Tyrone then testified that defendant returned, that Tyrone saw a gun in the truck, that defendant pulled the gun while asking Ford why he was ruining his family, and that defendant raised the gun again and *pushed Jason away when Jason hit at the gun*. Finally, Tyrone testified that when he called his mother after the shooting, he told her, "Dad shot Bogey [Ford]." All of this testimony was elicited properly without reference to Tyrone's pretrial statement.

When Tyrone stopped short of recounting how defendant aimed the gun, the State confronted him with the statement he made to the police the evening of the shooting. Though Tyrone denied saying certain things to the prosecutor, he admitted that he signed the statement as a true and accurate version of what he told the police and that he recently had reviewed the statement with the prosecutor. It was at this point that the erroneous (for substantive purposes) admission of the prior inconsistent statement occurred.

The State also properly elicited damaging testimony from Jason Miller, defendant's other son, before introducing his pretrial statement. Jason testified that he heard defendant arguing with the victim about Daisy and the family, that he saw a gun in defendant's hand, and that defendant pointed the gun like a finger at Ford. Jason also admitted reviewing his statement right before the trial.

Two other witnesses for the State testified that they saw defendant get out of the truck with a gun. One admitted she saw Jason and defendant struggling over the gun after the victim had been shot.

Officer Maxwell explained to the jury that to fire the gun in question, it first has to be cocked. Through Maxwell, the State also properly introduced defendant's statement, given on the night of the shooting, that he normally did not carry his rifle in his truck, and his spontaneous statement, "I did what I done, they can put me in the gas chamber or in the electric chair, but I'd do it again."

Considering the weight and consistency of the various witnesses' testimony, the evidence that the rifle could not have been fired without first being cocked, and defendant's own incriminating statements, I would hold that defendant has failed to meet his burden of showing that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial . . . ." N.C.G.S. § 15A-1443(a) (1988). Premeditation and deliberation are not ordinarily susceptible to proof by direct evidence and, therefore, must usually be proved by circumstantial evidence. *State v. Hamlet*, 312 N.C. 162, 170, 321 S.E.2d 837, 843 (1984). Given the ample circumstantial evidence leading almost inexorably to a conclusion that the killing was premeditated and deliberated, and given that the jury was properly instructed on the only defense—that of accident—and rejected it, I cannot agree that there is a reasonable possibility the jury would have reached a different verdict if it had not heard the statements of Tyrone and Jason.

Therefore, I respectfully dissent from the holding awarding a new trial.

Justice MEYER joins in this dissenting opinion.