STATE OF NORTH CAROLINA v. MARLOW TYRONE WILLIAMS

No. 138A94

(Filed 28 July 1995)

**1. Evidence and Witnesses § 2927 (NCI4th)— State's impeachment of own witness—State surprised by testimony**

The trial court did not err in allowing the State to impeach its own witness with her prior inconsistent statement where defendant's girlfriend testified at trial that defendant told her that another person shot the victim, and there was nothing to indicate that the State knew or believed prior to calling defendant's girlfriend to testify that she would testify differently from her prior statement that defendant told her he had shot the victim. The fact that the prosecutor knew the girlfriend had visited defendant in jail and had ridden home with defendant's mother from trial did not show that the prosecutor knew the witness would change her testimony. N.C.G.S. § 8C-1, Rule 607.

Am Jur 2d, Depositions and Discovery § 428; Evidence §§ 668-678, 702, 706, 760, 774; Federal Rules of Evidence §§ 205-208, 373, 380, 382, 386; Perjury § 86; Witnesses §§ 739, 770, 864, 931-950, 972, 1022.

Use or admissibility of prior inconsistent statements of witness as substantive evidence of facts to which they relate in criminal case—modern state cases. 30 ALR4th 414.

1

**2. Evidence and Witnesses § 705 (NCI4th)— limiting instruction not given in conjunction with testimony—no error**

Although the correct procedure would have been for the trial court to give defendant's requested limiting instruction with regard to a prior inconsistent statement at the time the request was made and in conjunction with the admission of the statement, because the trial court gave a correct limiting instruction in its charge, the error was not prejudicial.

Am Jur 2d, Appeal and Error § 890; Evidence §§ 321-323, 341, 413, 461, 473, 854, 1061; Federal Rules of Evidence §§ 27-29, 93, 95, 109, 137, 222; Homicide §§ 227, 493; Trial §§ 166, 167, 434, 618, 1105, 1209, 1282-1284, 1565, 1591.

**3. Evidence and Witnesses § 3164 (NCI4th)— prior inconsistent statement—extrinsic evidence properly allowed—instructions proper**

The trial court did not err in allowing the State to introduce extrinsic evidence of a witness's prior inconsistent statement where the witness testified on direct examination that she had made the prior inconsistent statement, since the extrinsic evidence of this statement was thus admissible to corroborate this portion of the witness's testimony.

Am Jur 2d, Federal Rules of Evidence §§ 208, 380-383; Witnesses §§ 932, 948.

Use or admissibility of prior inconsistent statements of witness as substantive evidence of facts to which they relate in criminal case—modern state cases. 30 ALR4th 414.

**4. Evidence and Witnesses § 3111 (NCI4th)— corroborating evidence—sufficiency of instructions**

The purpose for which the jury could consider corroborating evidence was adequately explained to the jury where the court instructed the jury to consider a prior statement solely for corroborating the witness's testimony at trial if the jury found that the prior statement did corroborate the trial testimony; the court instructed the jury not to consider prior statements as evidence of the truth of what was said at the earlier time; and defendant made no special request for an instruction concerning the difference between corroborative and substantive evidence.

Am Jur 2d, Evidence §§ 321-323, 793; Federal Rules of Evidence §§ 27, 137; Homicide § 277; Trial §§ 864, 1283.

5. **Criminal Law § 427 (NCI4th)— closing argument—no comment on defendant's failure to testify**

Statements made by the prosecutor during his closing argument were directed solely toward defendant's failure to offer evidence to rebut the State's case, not toward defendant's failure to testify; there was no comment in the closing argument which intimated that defendant had the burden of proving his innocence; and the trial court therefore did not err in denying defendant's motion for a mistrial based on the prosecutor's closing argument.

Am Jur 2d, Evidence § 248; Homicide § 463; Trial §§ 579-597, 707, 708.

Violation of federal constitutional rule (*Griffin v. California*) prohibiting adverse comment by prosecutor or court upon accused's failure to testify, as constituting reversible or harmless error. 24 ALR3d 1093.

Former jeopardy: Propriety of trial court's declaration of mistrial or discharge of jury, without accused's consent, on ground of prosecution's disclosure of prejudicial matter to, or making prejudicial remarks in presence of, jury. 77 ALR3d 1143.

Failure to object to improper questions or comments as to defendant's pretrial silence or failure to testify as constituting waiver of right to complain of error—modern cases. 32 ALR4th 774.

6. **Constitutional Law § 164 (NCI4th)— witness's false testimony—no intentional use by State to obtain conviction**

Assuming *arguendo* that the State knew that a witness's testimony that he was outside a deli when shots were fired was false, defendant's constitutional rights were not violated by the State's use of this testimony since defendant failed to show that this testimony was material and that the State knowingly and intentionally used this testimony to obtain defendant's conviction for murder.

Am Jur 2d, Criminal Law §§ 784, 829; Evidence §§ 345, 441; Perjury §§ 31, 78, 84, 116; Witnesses §§ 82, 136.

**7. Evidence and Witnesses § 308 (NCI4th)— arrest for carrying concealed weapon—admissibility of evidence**

The trial court in a murder prosecution did not err in admitting evidence that defendant was arrested for carrying a concealed weapon in connection with the seizure of the handgun used to commit the murder, since the evidence was relevant to show defendant's possession of the murder weapon and the circumstances under which the police obtained this weapon.

**Am Jur 2d, Burglary § 59; Criminal Law § 599; Evidence §§ 734, 765; Robbery §§ 55, 59.**

**8. Evidence and Witnesses § 1693 (NCI4th)— photographs of murder victim—admissibility**

The trial court did not err in denying defendant's motion to exclude photographs of the murder victim as inflammatory and unfairly prejudicial, since the photographs were illustrative of testimony regarding the nature and number of the victim's wounds, the condition of the body upon discovery, and the crime scene.

**Am Jur 2d, Depositions and Discovery §§ 447, 449; Evidence § 961, 970-986; Expert and Opinion Evidence § 7; Federal Rules of Evidence § 89; Homicide §§ 276, 416, 417.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentence of life imprisonment entered by Rousseau, J., at the 12 July 1993 Criminal Session of Superior Court, Forsyth County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for robbery with a dangerous weapon was allowed 22 March 1994. Heard in the Supreme Court 14 February 1995.

*Michael F. Easley, Attorney General, by Francis W. Crawley, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

ORR, Justice.

This case arises out of the January 1992 murder of Steven Michael Brewer and the October 1992 robbery of TJ's Deli in Winston-Salem, North Carolina. Defendant was indicted for these crimes on 3 May

1993 and capitally tried at the 12 July 1993 Criminal Session of Superior Court, Forsyth County. Following the trial, a jury returned a verdict finding defendant guilty of one count of first-degree murder and one count of robbery with a dangerous weapon. The jury was unable to reach a unanimous sentencing recommendation regarding the murder conviction, and on 23 July 1993, the trial court entered judgments imposing a sentence of life imprisonment for the first-degree murder conviction and a consecutive forty-year term of imprisonment for the robbery with a dangerous weapon conviction.

On appeal, defendant brings forward five assignments of error. After a thorough review of the transcript of the proceedings, the record on appeal, the briefs, and oral argument, we conclude that defendant received a fair trial free from prejudicial error, and, for the reasons stated below, we affirm his convictions and sentences.

The State presented the following evidence concerning the first-degree murder conviction: In January 1992, Michael Brewer lived with his father and mother in Clemmons, North Carolina. At the time, Michael was thirty-six years old and worked as an assistant manager at TJ's Deli in Sherwood Plaza on Robinhood Road. On 25 January 1992, Michael was in charge of opening the deli for business and closing the deli at the end of the business day.

The owner of TJ's Deli, Andrew Jones, testified that on the morning of 26 January 1992, he received a call from his employees telling him that although Michael's car was parked outside of the deli, there seemed to be no one on the premises to let them inside the deli for work. In response to this call, Mr. Jones drove over to the deli. Mr. Jones testified that after he arrived at the deli, he entered the building through the front door. Because the alarm did not sound when he entered the front door, Mr. Jones proceeded to the back of the deli to check on the system. At this time, he found Brewer's body lying on the floor in the men's bathroom. Mr. Jones testified that when he saw Brewer's body, he immediately turned around and ran to his office to call 911. Noticing that the door to his office was open, he became frightened and left the deli to call 911 from the Revco next door.

Officer Bonnie Hancock of the Winston-Salem Police Department testified that she arrived at TJ's Deli at approximately 10:45 the morning of 26 January 1992 and spoke with the EMS personnel on the scene. Officer Hancock testified that she and the EMS personnel proceeded to the back of the deli where they observed Michael Brewer's body lying face down in a pool of blood. The EMS personnel informed

Officer Hancock that the body did not have a pulse, and Officer Hancock secured the scene. Officer Hancock testified that there was a wallet located to the right of the victim's shoulder and a 9 millimeter shell casing lying on the victim's back.

Dr. Patrick Eugene Lantz, a Forsyth County medical examiner and regional forensic pathologist, testified that he examined the crime scene and subsequently performed an autopsy on Michael Brewer. Dr. Lantz testified that during the autopsy, he observed two medium-caliber gunshot wounds to the head, one wound entering on the right side of the head involving the right ear, and the other wound entering in the back of the head at the base of the skull. Dr. Lantz testified that in his opinion, the gunshot wound to the back of the head occurred first. Dr. Lantz further testified that in his opinion, based on his examination of the scene and the physical evidence, the victim's head was slightly off the floor, at or slightly below the level of the urinal, when he received the first bullet wound and that the left side of the victim's head was in contact with the floor when he received the second bullet wound. Dr. Lantz testified that the victim died as a result of the two gunshot wounds.

Mr. Jones testified that in January 1992, he kept money in a locked file cabinet in his office at the deli. On 26 January 1992, there was no money found in the file cabinet. Mr. Jones determined that $1,250 of daily cash and approximately $900 to $950 from the previous day's receipts were missing. Mr. Jones testified that other than himself, only his managers had a key to the file cabinet and that he had not given anyone permission to take the money.

Mr. Jones further testified that defendant had been an employee of his at TJ's Deli in Sherwood Plaza and at a second location on Stratford Road. Defendant began working for Mr. Jones in 1988 at the Sherwood Plaza location, left his employment, and was rehired a couple of times. Mr. Jones testified that the last time defendant worked for him was in January 1993.

Defendant's girlfriend, Tonya Dalton, testified that on 6 January 1992, she took a handgun from under her mother's bed and gave it to defendant before she left for New York to live with her aunt. Dalton identified the handgun she had given to defendant as State's Exhibit 18, a 9 millimeter Taurus handgun. Special Agent Eugene Bishop of the SBI testified that he examined the 9 millimeter Taurus handgun, bullets recovered from under the victim's head, and shell casings

recovered from the crime scene and determined that the casings and at least one of the bullets were fired from the handgun in question.

Tonya Dalton also testified that after she returned from New York on 24 March 1992, she saw the gun one more time in defendant's possession before defendant told her that the police confiscated it from him while he was sitting in a car at Wessex Apartments. Dalton testified that defendant also told her about the incident that occurred at TJ's Deli the night of 25 January 1992. Although Dalton testified at trial that defendant told her that Eugene Wilson killed Michael Brewer, she admitted that she had told police officers a week before trial that defendant told her that he killed Michael Brewer.

Eugene Wilson testified that a week before 25 January 1992, he and defendant planned to rob TJ's Deli. At this time, Wilson was an employee of the deli. Wilson further testified that defendant told him he was thinking about "popping and capping" Michael Brewer. Wilson testified that "popping and capping" meant to shoot somebody and that he told defendant he would not be a part of the plan if Michael Brewer had to die.

Wilson further testified that he worked at TJ's Deli the night of 25 January 1992. When he finished work that night, between 10:30 and 11:00 p.m., Wilson left the deli through the back door and met defendant in the alley. Wilson testified that defendant had a gun with him. Wilson further testified that he and defendant waited in the alley for about an hour to an hour and a half until Michael came out of the deli. At this time, defendant pointed the gun at Michael and told him to open the door and turn off the alarm. Michael opened the door, and defendant entered the deli with Michael. Wilson testified that thirty seconds later, defendant opened the back door and waved him inside. Wilson entered the deli and saw the men's bathroom door halfway open. Defendant stuck his arm out of the bathroom door and dropped keys on the floor for Wilson. Wilson took the keys, went through the kitchen door, and opened the office.

Wilson testified that while he was in the kitchen area and office, he heard Michael begging defendant not to hurt him and that it sounded as if Michael were crying. Wilson testified that he took the money out of the file cabinet, left the office, went through the kitchen and out the back door. Wilson testified that as he was going through the kitchen, he again heard Michael in the bathroom crying and asking defendant not to hurt him. Wilson further testified that after he had left the building and taken about three or four steps outside, he

heard "two shots go off." Wilson ran to his car, and thirty seconds later defendant appeared at the passenger side. Wilson testified that he asked defendant about the shots and that defendant first stated, "Don't worry about it. Just drive." Defendant then stated, "It ain't no witnesses. Just forget about it." Wilson testified that the next day he told Anthony Williamson that he and defendant had robbed TJ's Deli and that defendant had shot Michael Brewer.

Anthony Williamson testified that the day after the January 1992 robbery and murder, Eugene Wilson told him that he and defendant had waited outside the deli until Michael came outside; that defendant took Michael and put him in the bathroom; that at that time, Wilson took the keys to the office and took the money; and that he heard two shots after he left the deli.

The State presented the following evidence concerning the October 1992 robbery at TJ's Deli: Williamson testified that in October 1992, he was an employee of TJ's Deli on Robinhood Road and that two weeks before 2 October 1992, he discussed robbing TJ's Deli with Wilson, defendant, and Williamson's cousin, Carl Gaither. Williamson testified that the plan was to have him and Wilson working on the inside so that one of them could open the door and let Gaither and defendant in to rob the deli.

Rita Nash testified that on 2 October 1992, she was working at TJ's Deli with Williamson and Wilson. Nash testified that while she was cleaning the dining area after the deli had closed, Williamson approached her and asked that the front door be unlocked so that he and Wilson could go to Revco. Nash told Williamson that she would lock the door behind them. Nash testified that when Williamson stepped partially through the door, two men with ski masks and guns pushed him back, knocked Nash on the floor, and entered the deli. Nash further testified that one of the men grabbed her, dragged her down the hallway, and threw her into the men's bathroom, where Wilson and Williamson were standing up against one of the walls. Thereafter, the gunmen threw the nighttime manager, Joann Richardson, into the bathroom. Nash testified that at this time, Wilson and Williamson were "just very calm." Nash testified that after the gunmen left the bathroom, she and the three others remained in the bathroom for about five minutes before they went out into the restaurant and called the police.

Joann Richardson testified that on 2 October 1992, there was approximately $2,500 to $3,000 in the deli. Richardson testified that

as she was counting the money, a gunman came into the back office and pulled her down the hall to the men's bathroom. When they reached the men's bathroom, the gunman jerked her back into the office area where the money was located. Richardson testified that the gunman had a gun pointed at her face while they were in the office, so she sat down and let the man have the money.

Williamson testified that he recognized the gunmen as his cousin Gaither and defendant. Williamson testified that Gaither was carrying a small handgun and that defendant was carrying an AK-47. Williamson further testified that the day after the 2 October 1992 robbery, he met defendant at Millbrook Apartments, where defendant gave Williamson his and Wilson's share of the stolen money.

Defendant presented no evidence during the guilt phase of the trial.

## I.

[1] On appeal, defendant first contends that the trial court erred in allowing the State to impeach its own witness, Tonya Dalton, with her prior inconsistent statement and by failing to give a proper limiting instruction. We disagree.

"The credibility of a witness may be attacked by any party, including the party calling him." N.C.G.S. § 8C-1, Rule 607 (1992). "[W]here the party calling a witness is genuinely surprised by the witness' change of his or her version of facts, impeachment by prior inconsistent statements is proper." *State v. Miller*, 330 N.C. 56, 62-63, 408 S.E.2d 846, 850 (1991) (citing *State v. Hunt*, 324 N.C. 343, 350, 378 S.E.2d 754, 758 (1989)). In such situations, however, "the prior inconsistent statements may only be used to impeach the witness' credibility; they may not be admitted as substantive evidence." *Id.* at 63, 408 S.E.2d at 850 (citing *Hunt*, 324 N.C. at 350, 378 S.E.2d at 758).

In the present case, Tonya Dalton testified on direct examination that defendant told her that Eugene Wilson shot Michael Brewer. The State was then allowed to impeach Dalton with her prior inconsistent statement that defendant told her that *he* shot Michael Brewer. Specifically, the prosecutor asked Dalton if she remembered meeting with him, Detective Rowe, and another prosecutor, in the District Attorney's office the week prior to trial, and Dalton responded that she did. The prosecutor then asked Dalton whether she remembered telling them during that meeting that defendant told her he shot Michael Brewer. Over objection, Dalton answered, "Yes."

The prosecutor also asked Dalton if she remembered talking to Detective Rowe in January 1993. Dalton responded, "Yes, I do." The prosecutor asked Dalton if she remembered "telling Detective Rowe that [defendant] told [her] that he shot Michael Brewer." Dalton responded, "Yes." The prosecutor again asked Dalton what defendant told her about the events at TJ's Deli in January 1992, and Dalton responded that defendant told her that Eugene Wilson killed Michael Brewer. The prosecutor asked Dalton, "Why are you testifying differently than the statements you made to Detective Rowe in January of 1993 and the statements you made in the District Attorney's office last week?" Over objection, Dalton responded:

> Because, when I was in that room that night, I feel I was threatened and it was like I didn't really have a chance to say what the real deal was so I feel like words were put into my mouth.

> . . . .

> That night I was scared. I was. Nervous, I didn't have an exact idea of what was going on, but when I was in that room, everyone was saying different things to me as far as what happened and now I feel is my chance to speak out.

The prosecutor asked Dalton why she had not made a statement to him in his office about Eugene Wilson shooting Michael Brewer. Over objection Dalton responded that it was because she was afraid.

Our review of this testimony and the record finds nothing indicating that the State knew or believed prior to calling Dalton to testify that Dalton would testify differently from her prior statement that defendant told her he shot Michael Brewer. In fact, Dalton admitted that she had not told the police or the prosecutors during their meeting that she intended to change her version of the facts to say that defendant told her Eugene Wilson shot Michael Brewer. Further, Dalton stated that she felt as though the trial was her "chance to speak out" and that she was scared to tell the detectives prior to trial that defendant told her Eugene Wilson shot Michael Brewer, thus indicating that she had not spoken to the State about her change of testimony prior to trial.

In addition, following Dalton's testimony, the prosecutor informed the court that an officer had talked with Dalton that morning to make sure that she was going to testify consistently with what she had previously told the State and that the State was taken by sur-

**STATE v. WILLIAMS**

[341 N.C. 1 (1995)]

prise by her testimony at trial. Based on the foregoing, we conclude that the State was surprised at trial by Dalton's change of her version of the facts, and the trial court properly allowed the State to impeach Dalton with her prior inconsistent statement.

Further, we disagree with defendant's assertion that the prosecutor's questions following Dalton's change in testimony indicate that the prosecutor was not surprised by the change. The fact that the prosecutor knew Dalton had visited defendant in jail and had ridden home with defendant's mother from trial does not show that the prosecutor knew that Dalton would change her testimony. We find no error.

**[2]** Defendant also argues that the trial court erred in failing to give his requested limiting instruction with regard to Dalton's prior inconsistent statement at the time the inconsistent statement was introduced. In its final charge to the jury, however, the trial court gave the following instruction:

> Also, members of the jury, evidence has been received tending to show at an earlier time various witnesses made a statement which may be—made an earlier statement which may be consistent with or in conflict with that witness's testimony at this trial. You must not consider such earlier statements as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial. If you believe that such earlier statements were made and it [sic] is consistent with or conflicts with the testimony of the witness at this trial, then you may consider this together with all other facts and circumstances bearing upon that witness's truthfulness in deciding whether you will believe or disbelieve his testimony at this trial.

Although the correct procedure would have been for the court to give the requested instruction at the time the request was made and in conjunction with the admission of the statement, because the trial court gave a correct limiting instruction in its charge, the error was not prejudicial. *See State v. Branch*, 288 N.C. 514, 534, 220 S.E.2d 495, 509 (1975), *cert. denied*, 433 U.S. 907, 53 L. Ed. 2d 1091 (1977), *overruled on other grounds by State v. Adcock*, 310 N.C. 1, 310 S.E.2d 587 (1984); *State v. DeBerry*, 38 N.C. App. 538, 540-41, 248 S.E.2d 356, 358 (1978).

**[3]** Finally, with regard to Dalton's prior inconsistent statement, defendant contends that the trial court erred in allowing the State to

introduce extrinsic evidence of Dalton's prior statement and by failing to give proper instructions regarding this statement. Because we hold that the statement was properly admitted to corroborate Dalton's testimony and that the trial court properly instructed the jury, we disagree.

Following Dalton's testimony, Detective Young of the Winston-Salem Police Department identified a statement that he took from Dalton on 20 January 1993. Prior to allowing Detective Young to read a portion of this statement into evidence, the trial court gave the following instruction to the jury:

> Now, members of the jury, what this officer is about to repeat, the statement she gave, again is offered for the purpose of corroborating Tonya Dalton, if you find it does corroborate. Again, that means if it agrees with or lends support to what she has previously said about it on the witness stand. If it doesn't agree with it, disregard it completely or disregard that portion that doesn't agree with it.

Thereafter, Detective Young read a portion of the statement into evidence, which included Dalton's statements regarding the gun she took from her mother's house and gave to defendant, how the gun was confiscated by the police, and defendant's statement to her that he shot Michael Brewer.

The only portion of the statement to which defendant objects is where Dalton told Detective Young that defendant told her he shot Michael Brewer. Citing *Hunt*, 324 N.C. 343, 378 S.E.2d 754, defendant argues this statement was inadmissible as extrinsic evidence of a prior inconsistent statement. In *Hunt*, the witness denied making a prior statement, and this Court held that an officer's statement to the contrary was inadmissible to impeach the witness' testimony. In the present case, however, Dalton testified on direct examination that she had made the prior inconsistent statement. Thus, the extrinsic evidence of this statement was admissible to corroborate this portion of Dalton's testimony. *State v. Westall*, 116 N.C. App. 534, 546, 449 S.E.2d 24, 31 (where witness testified on direct that he made an earlier statement but that it was a lie, officer's testimony regarding the witness' earlier statement was admissible to corroborate the witness' testimony regarding the earlier statement), *disc. rev. denied*, 338 N.C. 671, 453 S.E.2d 185 (1994); *see State v. McDowell*, 329 N.C. 363, 384, 407 S.E.2d 200, 212 (1991) ("[P]rior statements of a witness can be

admitted as corroborative evidence if they tend to add weight or credibility to the witness' trial testimony.").

[4] Regarding the instruction on corroboration, defendant contends the trial court should have told the jury not to consider the prior statement as substantive evidence. First, the trial court instructed the jury to consider the statement solely for corroborating the witness' testimony at trial if the jury found that the prior statement did corroborate the trial testimony. This instruction was proper. *State v. Detter*, 298 N.C. 604, 629, 260 S.E.2d 567, 585 (1979). Second, in his final charge, the trial judge instructed the jury, "You must not consider such earlier statements as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial." It is well established that in the absence of a special request, it is not error for the trial judge to fail to explain in his charge to the jury the difference between corroborative evidence and substantive evidence. *Id.* at 630, 260 S.E.2d at 585-86. Here, the purpose for which the jury could consider the evidence was adequately explained to the jury, and defendant made no special request for further instructions. Defendant's assignment of error is overruled.

## II.

[5] Next, defendant contends that the trial court erred by overruling his objection to the prosecutor's closing argument. Defendant argues that the prosecutor improperly commented on defendant's right not to testify and shifted the burden of proof to defendant. Based on this argument, defendant also contends that the trial court erred in denying his motion for a mistrial. We disagree.

"[I]t is well-settled law that a defendant need not testify" and "that the burden of proof remains with the State regardless of whether a defendant presents any evidence." *State v. Howard*, 320 N.C. 718, 729, 360 S.E.2d 790, 796 (1987). Further, it is well-settled law that "[i]n closing arguments a prosecutor may not comment on the failure of a defendant to testify at trial." *Id.* at 728, 360 S.E.2d at 796 (citing *State v. Thompson*, 290 N.C. 431, 226 S.E.2d 487 (1976)). "However, it is permissible for the prosecutor to bring to the jury's attention 'a defendant's failure to produce exculpatory evidence or to contradict evidence presented by the State.' " *Id.* (quoting *State v. Mason*, 317 N.C. 283, 287, 345 S.E.2d 195, 197 (1986)); *accord State v. Reid*, 334 N.C. 551, 555, 434 S.E.2d 193, 196 (1993).

The following pertinent portion of the prosecutor's closing argument states:

**STATE v. WILLIAMS**

[341 N.C. 1 (1995)]

[PROSECUTOR]: . . . And don't you know, members of the jury—I'm only going to take a few more minutes of your time. You know, I—I know the mind can only absorb what the rear can endure so if you'll just give me about two more minutes I'm about finished. Don't you know, don't you just know in your heart of hearts that if this man right here was somewhere else on January the 25th and October the 2nd of 1992 other than T J's Deli, don't you think somebody would have come in here and told you where he was?

[DEFENSE COUNSEL]: Objection.

THE COURT: Overruled.

[DEFENSE COUNSEL]: Motion to strike.

[PROSECUTOR]: Don't you think that?

THE COURT: Motion denied.

[PROSECUTOR]: Don't you know that in your heart of hearts? Don't you know that? If you don't know anything else, you know that. They can't do it because—

[DEFENSE COUNSEL]: Objection.

[PROSECUTOR]:—because he was where Eugene Wilson said he was on January the 25th—

THE COURT: Overruled.

[PROSECUTOR]:—and where Eugene and Anthony said he was on October the 2nd and I ask you to find him guilty on both cases.

Defendant argues that by these statements the prosecutor "clearly" meant that if defendant had been elsewhere, defendant himself would have said so in testimony, especially in light of the fact that the prosecutor was pointing at defendant while making these statements. Our review of these statements and the prosecutor's argument in its entirety leads us to conclude, however, that these statements were directed solely toward defendant's failure to offer evidence to rebut the State's case, not toward defendant's failure to testify. Furthermore, we fail to see any comment in the prosecutor's closing argument that intimates that defendant had the burden of proving his innocence. Accordingly, we find no error. *Howard*, 320 N.C. 718, 360 S.E.2d 790; *see State v. Jordan*, 305 N.C. 274, 287 S.E.2d 827 (1982).

Defendant also contends that the trial court erred in denying his motion for a mistrial based on the prosecutor's closing argument. "Whether to grant a motion for mistrial rests in the sound discretion of the trial court." *State v. Ward*, 338 N.C. 64, 92, 449 S.E.2d 709, 724 (1994) (citing *State v. Blackstock*, 314 N.C. 232, 243, 333 S.E.2d 245, 252 (1985)), *cert. denied*, — U.S. —, — L. Ed. 2d —, 63 U.S.L.W. 3833 (1995). "A ruling committed to the trial court's discretion will be upset only when the defendant shows that the ruling could not have been the result of a reasoned decision." *State v. Banks*, 322 N.C. 753, 768, 370 S.E.2d 398, 407 (1988) (citing *State v. Cameron*, 314 N.C. 516, 519, 335 S.E.2d 9, 11 (1985)). " 'A mistrial is appropriate only when there are such serious improprieties as would make it impossible to attain a fair and impartial verdict under the law.' " *Ward*, 338 N.C. at 92, 449 S.E.2d at 724 (quoting *Blackstock*, 314 N.C. at 243-44, 333 S.E.2d at 252).

Our review of the prosecutor's closing argument shows that the trial court did not abuse its discretion in denying defendant's motion for a mistrial, especially in light of our conclusion that the trial court properly overruled defendant's objection to the prosecutor's statements. Defendant's assignment of error is overruled.

## III.

**[6]** Next, defendant contends that his state and federal constitutional rights were violated when the State permitted its witness, Eugene Wilson, to give testimony concerning Wilson's location at the time of the murder that the State believed to be false. Based on this contention, defendant argues that he is entitled to a new trial. We disagree.

Prior to trial in the present case, the State revealed to counsel for the defense that it had withdrawn a plea agreement with Eugene Wilson because the State believed Wilson was lying about being outside TJ's Deli when the shots were fired. The State based this belief on the results of a polygraph test Wilson took before trial. At trial, Wilson testified as a witness for the State, including his testimony that he was outside the deli when the shots were fired. On appeal, defendant contends that the State violated defendant's right to due process by presenting this evidence which the State believed to be false and by failing to take adequate steps to correct the false testimony. We disagree.

STATE v. WILLIAMS

[341 N.C. 1 (1995)]

"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Napue v. Illinois*, 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221 (1959); *accord State v. McDowell*, 310 N.C. 61, 310 S.E.2d 301 (1984). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue*, 360 U.S. at 269, 3 L. Ed. 2d at 1221. Further, with regard to the knowing use of perjured testimony, the Supreme Court has established a " 'standard of materiality' under which the knowing use of perjured testimony requires a conviction to be set aside 'if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *State v. Sanders*, 327 N.C. 319, 336, 395 S.E.2d 412, 424 (1990) (quoting *United States v. Agurs*, 427 U.S. 97, 103, 49 L. Ed. 2d 342, 349-50 (1976)), *cert. denied*, 498 U.S. 1051, 112 L. Ed. 2d 782 (1991). Thus, "[w]hen a defendant shows that 'testimony was in fact false, material, and knowingly and intentionally used by the State to obtain his conviction,' he is entitled to a new trial." *Id.* at 336, 395 S.E.2d at 423 (quoting *State v. Robbins*, 319 N.C. 465, 514, 356 S.E.2d 279, 308 (1987), *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987)).

In the present case, even assuming *arguendo* that the State knew that Wilson's testimony that he was outside the deli when the shots were fired was false, defendant has still failed to show both that Wilson's testimony concerning his location when the shots were fired was material and that the State knowingly and intentionally used Wilson's testimony that he was outside the deli when the shots were fired to obtain defendant's conviction. Thus, defendant's argument is without merit. *Id.* at 336-37, 395 S.E.2d at 423-24.

First, the material facts linking defendant to the crime are that Wilson met defendant in the alley outside of TJ's Deli on 25 January 1992; that defendant was armed at this time; that defendant forced Michael Brewer into the deli at gunpoint and kept him in the men's bathroom during the robbery; that Michael was found dead, shot in the men's bathroom on 26 January 1992; that defendant told Wilson there would be no witnesses; and that defendant was in possession of the murder weapon from early January 1992 until the handgun was taken by the police in April 1992. Defendant and Wilson were the only two people involved in the January 1992 robbery, and whether Wilson was located inside or outside the deli when the shots were fired is irrelevant to whether defendant shot the victim. Thus, the fact that Wilson was located outside the building when the shots were fired was not material to the case against defendant.

STATE v. WILLIAMS

[341 N.C. 1 (1995)]

Second, we are confident beyond a reasonable doubt that Wilson's statement that he was outside the deli when the shots were fired did not contribute to defendant's conviction and that there was no reasonable likelihood that this statement could have affected the judgment of the jury. Thus, defendant has failed to show that the State knowingly and intentionally used Wilson's testimony concerning his location when the shots were fired to defendant's prejudice to obtain his conviction.

Accordingly, defendant's third assignment of error is overruled.

## IV.

[7] Defendant also contends that the trial court erred in overruling his objection to the admission of evidence that defendant was arrested for carrying a concealed weapon. In support of his contention, defendant argues that this evidence was both irrelevant and unfairly prejudicial.

The State introduced evidence that in April 1992, a police officer with the Winston-Salem Police Department seized a 9 millimeter Taurus handgun and a .22-caliber handgun from a car occupied by defendant and another individual named David Brown. Over defendant's objection, the State then presented evidence that the officer charged defendant with possession of a concealed weapon. Later, the 9 millimeter handgun was identified as the murder weapon. On appeal, defendant concedes that the evidence that the police seized the Taurus handgun was relevant to show that defendant was in possession of the murder weapon approximately two months after the 25 January 1992 crime. Further, defendant does not challenge the State's right to introduce "*some*" evidence of the seizure. However, defendant argues that it was error to allow the State to introduce evidence that defendant was arrested for carrying a concealed weapon in association with this seizure.

Under Rule 404(b) of the North Carolina Rules of Evidence, " 'evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused.' " *State v. Rannels*, 333 N.C. 644, 657, 430 S.E.2d 254, 261 (1993) (quoting *State v. Weaver*, 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986)). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1988).

In the present case, we conclude that the evidence that defendant was arrested for carrying a concealed weapon in connection with the seizure of the handgun was relevant to show defendant's possession of the murder weapon and the circumstances under which the police obtained this weapon. *See Rannels,* 333 N.C. at 658, 430 S.E.2d at 262 (where evidence defendant stole the murder weapon was relevant to show not only that he possessed the weapon but the circumstances under which he acquired it); *State v. Garner,* 331 N.C. 491, 509, 417 S.E.2d 502, 512 (1992) (where evidence concerning defendant's attempted murder of a taxicab driver three weeks after the murder for which defendant was being tried was relevant to show defendant's possession and control of the weapon at a time close in proximity to that of the murder). Defendant's assignment of error is overruled.

## V.

[8] Finally, defendant contends that the trial court erred in denying his motion to exclude photographs of the decedent as inflammatory and unfairly prejudicial. Defendant argues that because neither the identity of the victim nor the cause of his death were in dispute, the photographs added nothing to the presentation of the State's case and were therefore irrelevant and inadmissible. We find no error.

"Photographs of homicide victims are admissible at trial even if they are 'gory, gruesome, horrible, or revolting, so long as they are used by a witness to illustrate his testimony and so long as an excessive number of photographs are not used solely to arouse the passions of the jury.' " *State v. Thompson,* 328 N.C. 477, 491, 402 S.E.2d 386, 394 (1991) (quoting *State v. Murphy,* 321 N.C. 738, 741, 365 S.E.2d 615, 617 (1988)). " 'Photographs may also be introduced in a murder trial to illustrate testimony regarding the manner of killing so as to prove circumstantially the elements of murder in the first degree.' " *State v. Rose,* 335 N.C. 301, 319, 439 S.E.2d 518, 528 (quoting *State v. Hennis,* 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988)), *cert. denied,* —— U.S. ——, 129 L. Ed. 2d 883 (1994).

"Admissible evidence may be excluded, however, under Rule 403 of the North Carolina Rules of Evidence if the probative value of such evidence is substantially outweighed by its prejudicial effect." *State v. Fisher,* 336 N.C. 684, 701-02, 445 S.E.2d 866, 876, *reconsideration denied,* 337 N.C. 697, 448 S.E.2d 535 (1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 665 (1995). " 'Whether the use of photographic evidence is more probative than prejudicial and what constitutes an excessive number of photographs in light of the illustrative value of each . . . lies

within the discretion of the trial court.' " *Id.* at 702, 445 S.E.2d at 876 (quoting *Hennis*, 323 N.C. at 285, 372 S.E.2d at 527).

In the present case, we find that the photographs admitted into evidence were illustrative of testimony regarding the nature and number of the victim's wounds and the condition of the body upon discovery and of the crime scene. *Id.* These photographs were not excessive in number, and their probative value was not substantially outweighed by any prejudicial effect. The trial court did not, therefore, abuse its discretion in denying defendant's motion to exclude them.

For the foregoing reasons we conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.