STATE OF NORTH CAROLINA v. KENNETH B. SIDBERRY

No. 364A93

(Filed 6 October 1994)

1. **Evidence and Witnesses § 2994 (NCI4th)— cross-examination of defendant—prior convictions—guilty pleas—prayer for judgment continued**

   The trial court in a first-degree murder prosecution did not err by permitting the State to cross-examine defendant regarding prior guilty pleas to cocaine charges on which prayer for judgment had been continued pending the disposition of the murder charge where defendant was told by his attorney and by the judge during the plea hearing on the cocaine charges that the entry of guilty pleas had potential consequences in his pending murder trial and, further, that these convictions could be used to enhance punishment if he were convicted of less than first-degree murder, and the trial judge determined that defendant understood the impact of his guilty pleas and accepted the pleas after finding a factual basis for them.

   **Am Jur 2d, Witnesses § 570.**

   **Permissibility of impeaching credibility of witness by showing verdict of guilty without judgment of sentence thereon. 28 ALR4th 647.**

2. **Evidence and Witnesses § 930 (NCI4th)— exculpatory statement—hour after shooting—not excited utterance**

   An exculpatory statement about the shooting of the victim made by defendant to the aunt with whom he lived was not admissible as an excited utterance and was properly excluded as hearsay in this first-degree murder trial where defendant first talked with his aunt on the telephone after the shooting from his grandmother's house but did not mention the shooting, and defendant waited until he went to his aunt's home an hour after the shooting to tell her what had happened, since defendant had

**STATE v. SIDBERRY**

[337 N.C. 779 (1994)]

time to manufacture the statement and the statement lacked spontaneity. N.C.G.S. § 8C-1, Rule 803(2).

**Am Jur 2d, Evidence §§ 865, 882.**

**When is hearsay statement an "excited utterance" admissible under Rule 803(2) of the Federal Rules of Evidence. 48 ALR Fed 451.**

3. **Evidence and Witnesses § 3169 (NCI4th)— pretrial statement—admission for corroboration—significant discrepancies—harmless error**

A witness's pretrial statement contained significant discrepancies from his testimony in a murder trial as to whether defendant handed the murder weapon to the killer just prior to the killing and whether the killer was responding to defendant's request when he shot the victim, and the trial court erred by admitting the statement into evidence as corroboration of the witness's trial testimony. However, this error was harmless where other witnesses testified that defendant gave the killer the gun and that defendant admitted giving the gun to the killer, and there was overwhelming evidence that the killer listened to or carried through on defendant's advice to shoot the victim.

**Am Jur 2d, Witnesses §§ 641 et seq.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Parker, J., at the 1 June 1993 Criminal Session of Superior Court, Onslow County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 15 September 1994.

*Michael F. Easley, Attorney General, by John H. Watters, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Janine M. Crawley, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

Defendant was indicted for first-degree murder. He was tried noncapitally to a jury and found guilty as charged. Judge Parker sentenced him to a mandatory term of life imprisonment. Defendant appeals to this Court as of right from the first-degree murder conviction.

STATE v. SIDBERRY

[337 N.C. 779 (1994)]

The State's evidence showed that on 5 November 1992, defendant Kenneth Sidberry, Jarvis Mason, Rodney Arnold, Alfred Pickett, and the victim, Shammon Mattocks, were in the area of 109 Market Street in Jacksonville, North Carolina. Mason and Mattocks began arguing about $500.00 defendant and Mason believed that Mattocks had stolen from them. Mason shot Mattocks in the forehead with a .25-caliber weapon causing his death.

The State's evidence indicated that, just before Mason pulled the trigger, defendant had told Mason to "go ahead." There was also evidence that the gun used to shoot Mattocks was defendant's gun and that defendant gave it to Mason during the argument with the victim. All of the witnesses to the shooting who testified for the State either had criminal records or were in jail at the time of the trial, awaiting sentencing.

Defendant's evidence showed that defendant had been riding a motorbike behind the crime scene during the shooting and thus was not involved in the argument over money and that defendant did not own a gun. Defendant's evidence also showed that defendant heard a shot, saw the victim lying on the ground, then drove his motorbike first to his grandmother's and then to the home of his aunt, with whom he lived.

Additional facts will be addressed as necessary to an understanding of the issues.

[1] In his first assignment of error, defendant contends that the trial court erred by permitting the State to cross-examine him regarding prior guilty pleas on which prayer for judgment had been continued, thus improperly chilling his right to testify. Prior to this trial, defendant pled guilty to two unrelated charges of sale and delivery of cocaine. Prayer for judgment on these crimes was continued by the judge, pending the disposition of the murder charge. The judge explained that he continued prayer for judgment because he did not want to interfere with defendant's right to testify in the murder case. Defendant made a motion *in limine* to prohibit the State from cross-examining defendant regarding these guilty pleas if defendant chose to testify. This motion was denied. Defendant argues that this was constitutional error, chilling his constitutional right to testify and precluding the jury from directly assessing defendant's credibility.

North Carolina Rule of Evidence 609(a) provides:

> For the purpose of attacking the credibility of a witness, evidence
> that he has been convicted of a crime punishable by more than 60
> days confinement shall be admitted if elicited from him or estab-
> lished by public record during cross-examination or thereafter.

N.C.G.S. § 8C-1, Rule 609(a) (1993). Defendant argues that a prayer
for judgment continued is not a final judgment and should not be
treated as a conviction for purposes of Rule 609. We disagree.

Rule 609(a) allows a party, for the purpose of attacking the cred-
ibility of a witness, to elicit whether the witness has been convicted
of a crime punishable by more than sixty days' confinement. The per-
missible scope of inquiry is restricted to the name of the crime, the
time and place of conviction, and the punishment imposed. *State v.
Lynch*, 334 N.C. 402, 432 S.E.2d 349 (1993). "It is settled law in this
State that a plea of guilty, freely, understandingly, and voluntarily
entered, is equivalent to a conviction of the offense charged." *State v.
Watkins*, 283 N.C. 17, 27, 194 S.E.2d 800, 808, *cert. denied*, 414 U.S.
1000, 38 L. Ed. 2d 235 (1973).

Here, defendant was told by his attorney and by the judge during
the plea hearing in his case for sale and delivery of cocaine that the
entry of pleas of guilty had potential consequences in his pending
murder trial and further, that if he were convicted of less than first-
degree murder, these convictions could be used to enhance punish-
ment under the Fair Sentencing Act. The judge determined that
defendant understood the impact of his guilty pleas and then ac-
cepted the guilty pleas after finding a factual basis for the pleas.
Accordingly, we find that the trial court did not err in ruling that the
State could cross-examine defendant regarding these prior guilty
pleas if defendant chose to testify.

[2] In his next assignment of error, defendant contends that the trial
court erred by failing to allow Mai Pickett, his aunt with whom he
lived, to testify regarding an exculpatory statement made by defend-
ant. Defendant notes that in this case, his evidence showed that he
was sixteen years old; he saw the victim lying on the street, found his
grandmother who lived nearby, called his aunt from his grandmoth-
er's home, and then rode his motorbike home to his aunt's. Defendant
arrived at his home distraught and on the verge of tears. Defendant
then recounted the events of the shooting to his aunt, who was a
trusted adult and caretaker. Defendant told his aunt about the shoot-
ing within an hour of the shooting.

**STATE v. SIDBERRY**

[337 N.C. 779 (1994)]

North Carolina Rule of Evidence 803(2) provides that testimony of a witness as to a statement made by the declarant relating to a startling event and made while the declarant was under the stress of that event is not excludable under the hearsay rule. N.C.G.S. § 8C-1, Rule 803(2) (1993); *State v. Sneed*, 327 N.C. 266, 393 S.E.2d 531 (1990). This Court has held that for a statement to be admitted as an excited utterance, "there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985).

In this case, defendant first talked to his aunt on the telephone after the shooting from his grandmother's house. He called his aunt to tell her where he was and that he was on his way home. Defendant did not mention the shooting on the phone. Instead, he waited until after he had ridden home, an hour after the shooting, to tell her what had happened. These facts indicate a lapse of time sufficient to manufacture a statement and that the statement lacked spontaneity. *See State v. Fullwood*, 323 N.C. 371, 373 S.E.2d 518 (1988) (about an hour after victim's death, defendant told police officer that victim had stabbed him; statement not admitted because defendant had time to manufacture statement and it was not made spontaneously), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990), *on remand*, 329 N.C. 233, 404 S.E.2d 842 (1991). Therefore, we find that the trial court properly excluded Mai Pickett's testimony on the grounds that it was inadmissible hearsay.

[3] In his final assignment of error, defendant contends that the trial court erred by allowing Alfred Pickett's pretrial statement into evidence as corroboration of his testimony because the statement was inconsistent with Pickett's in-court testimony. Alfred Pickett was a key witness for the State. Over defendant's objection, Police Detective Carol Lynch was permitted to read into evidence notes that she had taken during an interrogation of Pickett prior to trial, as corroboration of Pickett's testimony. Defendant argues that Lynch should not have been allowed to read these notes because they included significant contradictions and a material noncorroborative addition to the testimony.

In support of this argument, defendant relies on this Court's decision in *State v. Burton*, 322 N.C. 447, 368 S.E.2d 630 (1988). In *Burton*, we held that " 'prior statements as to facts not referred to in

his trial testimony *and not tending to add weight or credibility* to it are not admissible as corroborative evidence. Additionally, the witness's *prior contradictory statements may not be admitted under the guise of corroborating* his testimony.' " *Id.* at 450, 368 S.E.2d at 632 (quoting *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 573-74 (1986)) (emphasis in original).

Defendant maintains that there were two discrepancies between Pickett's testimony and his pretrial statement to Officer Lynch. The first concerned whether defendant handed Mason the murder weapon just prior to the shooting. During direct examination and cross-examination, Pickett testified that he did not see defendant give Mason the gun prior to the shooting. However, Lynch's notes, read at trial, indicated that Pickett stated Mason got the gun from defendant, that defendant had the gun in his pants and then gave it to Mason.

The second discrepancy concerned a comment made during an argument among Mason, Pickett, and defendant on the day following the shooting. Pickett testified that on 6 November 1992, he accused defendant of acting wrongly on the previous day by telling Mason what to do. Pickett did not testify that Mason had said anything to defendant on that date. However, Lynch's notes indicated that Mason had said, "I shouldn't have listened to you [defendant]." Defendant argues that this was significant because Pickett's testimony at trial did not indicate that Mason had listened or responded to defendant, but the pretrial statement indicates that Mason was responding to defendant's request when shooting the victim.

We agree with defendant that Alfred Pickett's pretrial statement contained significant discrepancies from his testimony at trial and should not have been admitted as corroborative evidence. However, we find that the error was harmless. Prior to Pickett's corroborative statement being read to the jury, Rodney Arnold had testified that he saw defendant give Mason the gun during the argument. Anthony Winchip, a witness for the State, had also testified that defendant admitted giving the gun to Mason. As to the second discrepancy complained of, there is overwhelming evidence that Mason listened to or carried through on defendant's advice to shoot Shammon Mattocks. Therefore, we conclude that there is no reasonable possibility that, had the error not occurred, a different result would have been reached at trial.

In conclusion, we hold that there was no prejudicial error in defendant's conviction for first-degree murder and in the imposition of the mandatory sentence of life imprisonment.

NO ERROR.