STATE OF NORTH CAROLINA v. WILBUR WALDRIN FRANCIS

No. 165A95

(Filed 13 June 1996)

**1. Evidence and Witnesses § 3168 (NCI4th)— testimony admitted for corroboration—significant discrepancies— harmless error**

An SBI agent's testimony in a prosecution for two murders about a pretrial statement by a State's witness contained significant discrepancies from the witness's testimony at trial and should not have been admitted as corroborative evidence where the agent testified that the witness stated in the pretrial statement that he saw defendant shoot one victim and that two to three minutes passed between two shots and the witness testified at trial that he did not see who shot either victim and that the shots were not "long apart." However, the admission of the SBI agent's testimony was harmless error in light of the plenary competent evidence of defendant's guilt of the two murders, including testimony by defendant's accomplice that defendant shot both victims, the SBI agent's unchallenged corroborative testimony regarding the accomplice's statement to the agent, and defendant's own trial testimony admitting that he and the accomplice, with weapons, followed the victims into an alley where both victims were shot.

**Am Jur 2d, Witnesses §§ 1001-1026.**

**Admissibility of impeached witness' prior consistent statement—modern state criminal cases. 58 ALR4th 1014.**

**Admissibility of impeached witness' prior consistent statement—modern state civil cases. 59 ALR4th 1000.**

**2. Evidence and Witnesses § 3111 (NCI4th)— corroborative evidence—sufficiency of limiting instruction**

The trial court's limiting instruction on corroborative evidence adequately informed the jury as to the proper use of such evidence, even though it contained no definition of substantive versus corroborative evidence, where the court instructed the jury that it could not consider a prior statement as evidence of the truth of what was said at the earlier time because it was not under oath at the trial; the court instructed that a prior consistent state-

ment could be considered with all other facts and circumstances in determining whether to believe the witness at trial; and defendant made no special request for an instruction concerning the difference between corroborative and substantive evidence.

**Am Jur 2d, Trial §§ 1219, 1288.**

**Necessity of, and prejudicial effect of omitting, cautionary instruction to jury as to reliability of, or factors to be considered in evaluating, eyewitness identification testimony—state cases. 23 ALR4th 1089.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two sentences of life imprisonment entered by Brown (Frank R.), J., at the 3 January 1995 Criminal Session of Superior Court, Wilson County, upon jury verdicts of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments imposed for robbery with a dangerous weapon and conspiracy to commit murder was allowed 21 April 1995. Calendared for argument in the Supreme Court 11 March 1996; determined on the briefs without oral argument.

*Michael F. Easley, Attorney General, by John F. Maddrey, Assistant Attorney General, for the State.*

*J. Bryan Deans, Jr., for defendant-appellant.*

ORR, Justice.

During the evening of 19 December 1992, Willie Lee Howard, Jr., and Darren Stephone Hale were shot in retaliation for conducting drug transactions in the drug territory claimed by Avery Butts. Both victims died as a result of single gunshot wounds to their heads.

Defendant Wilbur Waldrin Francis was indicted for the 19 December 1992 first-degree murders of Howard and Hale. He was also indicted for robbery with a dangerous weapon and conspiracy to commit murder. He was tried capitally at the 3 January 1995 Criminal Session of Superior Court, Wilson County, and was found guilty as charged. After a capital sentencing proceeding, the jury did not find the existence of the sole aggravating circumstance submitted in each murder case and accordingly recommended sentences of life imprisonment. The trial court imposed two consecutive terms of life imprisonment. The trial court also imposed a sentence of fourteen years' imprisonment for the conviction of robbery with a dangerous weapon

and a sentence of nine years' imprisonment for the conviction of conspiracy to commit murder, both sentences to run consecutively.

Defendant appeals to this Court, asserting that he is entitled to a new trial based on the two assignments of error he raised relating to his first-degree murder convictions. Defendant raises no issues with respect to the robbery and conspiracy convictions.

A complete presentation of the evidence is unnecessary to understand the legal issues raised in this case. In summary, however, the State presented evidence tending to show the following:

Howard and Hale sold crack cocaine in the claimed cocaine territory of Avery Butts. However, they did not work for Butts, and testimony tended to show that Butts was angry that Howard and Hale had been selling cocaine on his block. State's witness Andre Joseph, who was defendant's accomplice in the murders, testified that he was present when Butts informed defendant that he wanted Howard and Hale "taken care of" and that defendant's response was, "Okay." Joseph further testified that Butts later specifically urged Joseph and defendant to kill Hale.

Joseph further testified that on 19 December 1992 at approximately 4:30 p.m., he and defendant stood outside a Minute Mart convenience store located on the corner of Lodge and Banks Streets in Wilson, North Carolina. Defendant told Joseph that he was going to "take care of" Hale and Howard for Butts. Hale and Howard arrived, and Joseph asked Hale for some change, at which time Hale pulled out a large sum of money. Joseph testified that he wanted Hale's money and that defendant told him that Hale and Howard were "going down."

Further, Joseph testified that after retrieving an unloaded .38-caliber pistol, an unloaded shotgun, and a loaded .22 LR caliber rifle and after attempting unsuccessfully to find some shells, he and defendant waited at the convenience store for Hale and Howard, who had left earlier, to return to the store. Hale and Howard arrived and went into the store, and when they exited, defendant and Joseph followed them to an alley, where Joseph pulled out a shotgun. Joseph testified that while he was searching Howard, he heard defendant say to Hale, "Didn't I tell you don't move?" and then defendant shot Hale. Defendant told Joseph to shoot Howard, but when he refused, defendant shot Howard as well. Joseph testified that he only intended

to rob the victims, that he did not know a shooting would take place, and that his shotgun was not loaded.

Defendant's evidence tended to show that he and Joseph followed the victims into the alley with the weapons but that it was Joseph, not defendant, who was the leader behind the robbery and shootings. Defense evidence also tended to show that Joseph shot Hale and Howard.

[1] Both of the issues raised by defendant on appeal arise from the trial court's admission of testimony by SBI Agent Jerry Ratley about statements made by State's witness Quentin Whitley during police interrogation on 20 December 1992. In his first assignment of error, defendant contends that the trial court erred by admitting evidence of Whitley's pretrial statement to Agent Ratley as corroborative evidence. Specifically, defendant argues that the statement Whitley gave to Ratley did not corroborate Whitley's testimony but was inconsistent with such testimony and therefore was improperly admitted as corroborative evidence.

> This Court has previously held that prior statements of a witness can be admitted as corroborative evidence if they tend to add weight or credibility to the witness' trial testimony. *State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48 (1990); *State v. Ramey*, 318 N.C. 457, 349 S.E.2d 566 (1986). New information contained within the witness' prior statement, but not referred to in his trial testimony, may also be admitted as corroborative evidence if it tends to add weight or credibility to that testimony. *Id.* However, the State cannot introduce prior statements which "actually directly contradicted . . . sworn testimony." *State v. Burton*, 322 N.C. 447, 451, 368 S.E.2d 630, 632 (1988).

*State v. McDowell*, 329 N.C. 363, 384, 407 S.E.2d 200, 212 (1991).

A review of the transcripts reveals that Whitley testified at trial that he observed "the two Jamaicans," referring to defendant and Joseph, retrieve guns. Whitley stated that Joseph retrieved a shotgun from behind a bush and that defendant retrieved a gun, which was in a paper bag, from behind an air conditioner. Specifically, Whitley testified on direct examination as follows regarding the sequence of events surrounding the shootings:

Q. And once you saw them get these guns, what, if anything, did you see the Jamaicans do?

STATE v. FRANCIS

[343 N.C. 436 (1996)]

A. No Response

Q. Once you saw the Jamaicans get these guns from the air conditioner and the bush, what, if anything, did you see the Jamaicans do then?

A. They started to follow them into the alley.

Q. Follow who?

A. Speedy [Howard] and Darrien [Hale].

Q. And what happened then, that you saw?

A. After that, I went back across the street, and I got to the corner of the store and I seen they were robbing them.

Q. Who was robbing who?

A. The two Jamaicans were robbing Speedy and Darrien.

Q. Now, what exactly did you see?

A. As I glanced over there I seen them and I stood there for a while and I heard them while they was talking. I really couldn't get all of the conversation. After that, I looked over there and someone called me across the street. I looked back over there and I heard a gunshot and I seen Speedy fall and I took off running.

Q. Did you see anybody fire a weapon?

A. I really can't say so, I just seen the tall one standing in front of Speedy and the short one standing in front of Darrien.

Q. And where was the tall one standing when Speedy went down.

A. He was standing on the right side of the alley there.

Q. Was he standing—was the tall one standing closer to Speedy or was he standing closer to Darrien?

MR. CLARK: Objection.

THE COURT: Overruled.

A. It was like on each side of the little alley there.

Q. Where was the shorter one standing in relationship [sic] to Darrien?

A. He was standing in front of Darrien. They was standing on the left side of the alley.

Q. And where was the taller one standing?

A. They was standing on the right side.

Q. Of the alley?

A. Yes.

Q. Could you tell how close the taller one was to Speedy?

A. They was almost face to face.

. . . .

Q. Now after you heard this gunshot, what did you do?

A. I started to run and then I had stopped. I had ran across the street to a friend girl's house but I stopped there and that's when I heard the second gunshot.

Q. What else did you see at that point?

A. After that, I seen the two running, so when they were running, I ran back towards over there and I seen both of them laying there and I told them to call the police.

On cross-examination, Whitley testified as follows:

Q. And when you saw the Jamaicans walk behind them [towards the alley], the short one was in front, is that right?

A. Yes, I think so. It's hard to think because it's been so long.

Q. I understand. How far in front do you reckon he was?

A. I don't really remember, one went around the store and the other one started walking up the street.

. . . .

Q. Did you see any one of them being shot?

A. No, I told you I heard the gunshot and I ran.

. . . .

Q. You didn't see anybody fall though, did you?

A. Well, like I said, the way I seen, I glanced—when I heard the shot, I glanced at it and I ran. It wasn't really no big stare, but—

Q. Right, but you didn't see anybody fall?

A. No.

Q. Did you ever see which one of the Jamaicans shot?

A. Yes, I did, once but—

Q. Who did?

A. But I can't really say.

Q. Okay, and how long did it take between the first gunshot and the second gunshot?

A. It wasn't that long apart.

. . . .

Q. Did you tell the officers that it was three minutes between the first shot and the second shot?

A. Yes, but it was a mistake. I really wasn't thinking, my mind was going, I was thinking about what was going on.

Q. Well, you were real scared at the time weren't you?

A. Yes, sir.

Q. And you ran right after it happened?

A. Yes.

Q. You really don't know what happened when you start thinking about it, do you?

A. No, sir, when I—

MR. COLVOLO: Objection, Your Honor.

MR. CLARK: That's all I have, Judge.

On redirect examination, Whitley testified that his memory of the situation was a little bit better when he gave Agent Ratley a statement than it was at trial.

Subsequently, the State called SBI Agent Ratley, who testified that on 20 December 1992, he questioned Whitley at the police department and that Whitley picked defendant and Joseph out of a photo-

graphic lineup. Over defendant's objection, Ratley was allowed to testify on direct examination for corroboration purposes as follows with respect to the statement Whitley gave Ratley during the police interrogation:

Q. And what, if anything, did he tell you as far as the victims were concerned when he got back to the store.

A. He said he saw one of the Jamaicans go pick up a gun out of the bushes. He said that the taller Jamaican picked a gun up behind the air conditioner. He said that the tall Jamaican [defendant] had a small gun like a .22 and the other Jamaican [Joseph] had a larger gun.

Q. And what else did he say about that?

A. He said that after the two Jamaicans picked up the gun that Speedy and Darrien left and that the two Jamaicans followed Speedy and Darrien down Banks Street.

Q. What else did he tell you he witnessed at that point?

A. He said that he followed—he being Whitley—followed them to check on Speedy and Darrien because he had known Speedy since he was a kid. He said that they turned down the alley which would be Walnut Lane and he stopped. He said that at about that time he heard the Jamaican, say, "Put your hands up."

Q. What else, if anything, did he tell you?

A. He said that he heard the gunshot and saw Speedy fall. He said that the tall Jamaican [defendant] just stood there after he shot Speedy.

Q. What else did he tell you?

A. He said that—

MR. CLARK: Objection, Your Honor.

THE COURT: Overruled.

A. He said that he turned and walked down towards Lodge Street and he said that within two or three minutes he heard a second shot, he said he saw the two Jamaicans run behind a white house near the alley. . . .

On cross-examination, Agent Ratley testified as follows:

Q.  Did you receive a statement from him when you initially talked to him that he was very scared at the time that the shooting happened?

A.  No, sir, he didn't tell me that.

Q.  At the time that you initially interviewed him, did he tell you that he had only glanced in the direction of where the shot came from when he heard the shot?

A.  No, sir.

Q.  At the time that you initially interviewed him, did he indicate to you that as soon as he heard the shot, he went in the opposite direction?

A.  I don't recall him saying that.

Q.  At the time that you initially interviewed him, isn't it true that he told you that the first shot was followed by the second shot by two to three minutes?

A.  Yeah, he indicated that there was a time of about a couple of minutes between the first and second shot.

Q.  [] At the time that you initially interviewed him, did he tell you that he did not know who shot Speedy?

A.  When I interviewed him, he indicated to me that the taller of the two Jamaicans had shot Speedy.

Defendant contends that the trial court erred when it failed to sustain his objection and to allow his motion to strike the purported corroboration testimony of Agent Ratley when Ratley's testimony regarding the statement Whitley gave to him was in direct contradiction to Whitley's testimony at trial.

The first discrepancy concerns Ratley's testimony that in Whitley's prior statement, Whitley stated that he saw defendant shoot Howard. However, at trial, Whitley testified that he did not see who shot either of the victims and actually admitted on the stand under cross-examination that he did not know what happened between defendant, Joseph, and the victims. The second discrepancy concerns Ratley's testimony that in Whitley's pretrial statement, Whitley stated that two to three minutes passed between the two shots; whereas at trial, Whitley testified that the shots were not "long apart."

Defendant argues that these statements were admitted under the guise of corroborative evidence but were received as substantive evidence because the statements concern Whitley's observations at the crime scene and that Whitley's trial testimony reveals his uncertainty as to what happened at the crime scene between the victims, Joseph, and defendant. As we have previously stated, "a prior statement is admitted only as corroboration of the substantive witness and is not itself to be received as substantive evidence." *State v. Stills*, 310 N.C. 410, 415, 312 S.E.2d 443, 447 (1984).

We see no merit in the State's contention that the prior statements testified to by Agent Ratley add to the weight and credibility of Whitley's testimony. Giving due consideration to our prior holding that " 'prior contradictory statements may not be admitted under the guise of corroborating [a witness'] testimony,' " *Burton*, 322 N.C. at 450, 368 S.E.2d at 632 (alteration in original) (emphasis omitted) (quoting *Ramey*, 318 N.C. at 469, 349 S.E.2d at 573-74), we conclude that Ratley's testimony regarding Whitley's pretrial statement contained significant discrepancies from Whitley's testimony at trial and should not have been admitted as corroborative evidence. Essentially, Whitley's testimony at trial was itself contradictory and therefore could not be corroborated.

However, "there remain[s] 'plenary competent evidence . . . from which the jury could have determined defendant's guilt of the crime[s] charged.' " *Stills*, 310 N.C. at 416, 312 S.E.2d at 447 (alteration in original). Because defendant has shown no likelihood of achieving a different result at trial had Ratley's testimony concerning Whitley's prior statement not been admitted into evidence, we hold that the trial court's error is harmless. N.C.G.S. § 15A-1443(a) (1988).

Prior to Ratley's testimony, Joseph, defendant's accomplice, testified, directly implicating the defendant in both murders. Joseph testified that defendant told him that he was going to "take care of the guys for Butts," and later, after he and defendant had seen Hale pull out a large sum of money, defendant told him that Hale and Howard were "going down." Joseph further testified that defendant gave him a .38-caliber pistol to hold while defendant went to get a shotgun. Butts, who was also at the store, left and returned with a .22 LR caliber rifle and then left prior to the shootings. After defendant returned with the shotgun, he and Joseph went somewhere to get some shells, but returned to the store without any. Joseph further tes-

tified that while he was searching Howard, defendant shot Hale. Then defendant demanded that Joseph shoot Howard, but after he refused, defendant shot Howard in the head. Joseph's in-court testimony was bolstered by Agent Ratley's unchallenged corroborative testimony regarding the contents of Joseph's 21 December 1992 statement to Agent Ratley. Finally, defendant's own trial testimony substantially matches the testimony of Joseph, as defendant admitted at trial that he and Joseph, with weapons, followed the victims into the alley where both Hale and Howard were shot.

This Court has previously applied the harmless error standard under N.C.G.S. § 15A-1443(a) to determine whether an erroneous admission of a prior statement for purposes of corroboration entitled defendant to a new trial. In *State v. Farmer*, 333 N.C. 172, 424 S.E.2d 120 (1993), this Court found the evidence sufficient, if believed by a jury, to support a conviction of first-degree murder, concluding that "the defendant has not met his burden of showing a reasonable possibility that a different result would have been reached at the trial had [the witness'] pretrial written statement been excluded." *Id.* at 193, 424 S.E.2d at 132. Additionally, in the case of *State v. Sidberry*, 337 N.C. 779, 448 S.E.2d 798 (1994), this Court stated that where the witness' "pretrial statement contained significant discrepancies from his testimony at trial and should not have been admitted as corroborative evidence," "the error was harmless" because of the substantial evidence of defendant's guilt presented at trial. *Id.* at 784, 448 S.E.2d at 802. In the instant case, we conclude that defendant has failed to show a reasonable possibility that, had the error not occurred, a different result would have been reached at trial. This assignment of error is overruled.

[2] In his second assignment of error, defendant contends that the challenged corroborative evidence was improperly used as substantive evidence. Defendant argues that the trial court failed to adequately inform the jury in its limiting instruction on corroborative evidence as to the proper use of such evidence. "By definition, a prior statement is admitted only as corroboration of the substantive witness and is not itself to be received as substantive evidence." *Stills*, 310 N.C. at 415, 312 S.E.2d at 447. Believing that the trial court's limiting instruction on corroborative evidence was confusing, defective, and misleading to the jury, defendant asserts that the trial court's instruction was "sufficiently vague as to make the proper execution of the instruction unlikely or impossible."

STATE v. FRANCIS

[343 N.C. 436 (1996)]

The trial court gave the following limiting instruction to the jury:

All right, ladies and gentlemen of the jury, the evidence that is now being offered and evidence that will be offered is said to be evidence offered in corroboration. When evidence is received tending to show that at an earlier time a witness mad [sic] a statement which may be consistent or may conflict with the witnesses [sic] testimony at this trial, you must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not under oath at this trial. If you believe that such earlier statement was made and that it is consistent or does conflict with the testimony of the witness at this trial, then you may consider this, together with all other facts and circumstances bearing upon the witnesses [sic] truthfulness in deciding whether you will believe or disbelieve the testimony of that witness at this trial. It may not be considered by you for any other purpose.

This instruction substantially comports with the instruction reviewed and approved in *State v. Detter*, 298 N.C. 604, 631, 260 S.E.2d 567, 586 (1979), and is virtually identical to the instruction recently reviewed by this Court in *State v. Williams*, 341 N.C. 1, 11, 459 S.E.2d 208, 214 (1995), *cert. denied*, — U.S. —, 133 L. Ed. 2d 870 (1996). We held in *Williams* that the instruction was proper, stating that "[i]t is well established that in the absence of a special request, it is not error for the trial judge to fail to explain in his charge to the jury the difference between corroborative evidence and substantive evidence." *Id.* at 13, 459 S.E.2d at 215.

Here, the purpose for which the jury could consider the evidence was adequately explained to the jury, and defendant made no special request for further instructions. *Id.* We believe that the limiting instruction given is such that reasonable minds could glean the proper use of the prior statement made by Whitley to Agent Ratley even in the absence of working definitions of substantive versus corroborative evidence. This assignment of error is overruled.

Thus, after reviewing the transcripts, record, and briefs, we find no error in defendant's assignments of error, and, accordingly, uphold his first-degree murder convictions and sentences of life imprisonment.

NO ERROR.